**SO ORDERED.**

**SIGNED this 4th day of January, 2017.**



Dale L. Somers
United States Bankruptcy Judge

---

Designated for publication
# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:

  PAUL J. ROBBEN,

                DEBTOR.

CASE NO. 13-20814
CHAPTER 7

## MEMORANDUM OPINION AND JUDGMENT
## GRANTING THE MOTION OF THE BARTLETT PARTIES
## FOR RELIEF FROM THE DISCHARGE INJUNCTION
## TO LITIGATE THEIR CLAIMS AGAINST DEBTOR
## IN FEDERAL DISTRICT COURT

The Bartlett Parties[1] move to modify the discharge injunction to permit them,

notwithstanding Debtor Paul Robben's discharge, to pursue their action in the United

States District Court for the District of Kansas against Debtor and RDC Holdings, LLC,

---

[1]Bartlett Family Real Estate Fund, LLC; PRES, LLC; Foxfield Villa Associates, LLC; Richard A. Bartlett, and Ernest Straub, III. In the text, these parties will be referred to collectively as the Bartlett Parties.

to a conclusion and to thereafter litigate before this Court their pending adversary proceeding objecting to Debtor's discharge of most of the claims they are asserting against him in the federal court case. The Bartlett Parties appear by Frank Wendt, John M. Duggan, Deron A. Anliker, and Thomas J. Hamilton. Debtor opposes the motion. He appears by Jeffrey A. Deines, Shane J. McCall, and Robert M. Pitkin. The Court has jurisdiction.[2]

## BACKGROUND FACTS.[3]

### 1. Prebankruptcy events.

In 2000, Debtor began developing a 160-acre tract of raw land located in Olathe, Kansas. The development was initially undertaken by Foxfield Associates, LLC, owned indirectly by Debtor and two others. Financing was provided by Bank of Blue Valley. By 2007, the loan to Foxfield Associates was in default.

In March 2008, after being approached by the bank and Debtor, two of the Bartlett Parties, Ernest Straub and Richard Bartlett, invested in Foxfield Villa Associates, LLC (Foxfield Villa), which had acquired the project. Foxfield Villa was owned by the

---

[2] This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised the authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). A motion to modify the discharge injunction is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A) and (O). There is no objection to venue or jurisdiction over the parties.

[3] The Court draws the statement of background facts primarily from the pleadings submitted by the parties. They are intended to provide background for understanding the issue before the Court and are not intended to be definitive findings of fact.

Bartlett Family Real Estate Fund and PRES, LLC, a company co-owned by Straub and RDC Holdings LLC (RDC), a company Debtor owned.[4]  Financing was provided by Bank of Blue Valley and Bank Midwest.  The development project failed.

On September 1, 2011, Foxfield Villa sued Bank of Blue Valley in a state court. Debtor was not a party.  On August 10, 2012, the Bartlett Parties filed a suit in the federal district court for the District of Kansas against various board members of Bank of Blue Valley.[5]  The federal suit was stayed because of the state court action.  On March 8, 2013, the Bartlett Parties filed a second federal court lawsuit (the "District Court Case") against many of the same defendants they had sued in the first federal suit, plus RDC and Debtor.[6]  The thrust of their claims in the District Court Case is that Debtor and RDC committed various torts, including misrepresentation, fraud, and breach of fiduciary duty, when they induced the Bartlett Parties to invest in the development project.

**2. The bankruptcy filing and subsequent events.**

On April 3, 2013, Debtor filed for bankruptcy relief under Chapter 7.  On June 28, 2013, the Bartlett Parties filed a dischargeability complaint against Debtor, alleging that any judgment they might obtain against him in the District Court Case would be excepted from discharge by 11 U.S.C. § 523(a)(2)(A), (a)(4), (a)(6), and (a)(19).

---

[4] Since December 2012, Straub has been the sole owner of PRES, so RDC and Debtor no longer have a financial interest in Foxfield Villa.

[5] *Foxfield Villa Assocs., LLC, v. Regnier,* case no. 12-CV-2528-CM-JPO.

[6] *Bartlett Family Real Estate Fund, LLC, v. Regnier*, case no. 13-CV-2120-JWL-DJW.

3

On August 9, 2013, the two federal cases were consolidated under the first district court case number and then stayed pending the outcome of the state court action. In September 2013, the Bartlett Parties' motions for relief from stay to pursue the District Court Case and to stay the dischargeability proceeding were granted. Debtor did not object to either motion. The stay relief order states that it permits the "continuation of and conclusion to the entry of final judgment in the District Court Actions of [the Bartlett Parties'] claims against the Debtor."[7]

On February 6, 2014, Debtor was granted a discharge under § 727.

On June 2, 2015, a judgment was entered in the state court action in favor of Bank of Blue Valley on the plaintiffs' claims and against Foxfield Villa, Straub, and the Bartlett Parties, who evidently were counterclaim defendants. The state court case and the claims against the state court parties in the District Court Case were settled in October 2015, before an appeal from the state court judgment was determined. After the settlement, the only remaining claims in the District Court Case were the Bartlett Parties' claims against Debtor and RDC.

On November 25, 2015, the Bartlett Parties filed a 32-count second amended complaint against Debtor and RDC in the District Court Case.[8] The counts against Debtor are: Count 1 — Negligent Misrepresentation; Count 3 — Negligence as a Real Estate Broker and/or Salesperson; Count 5 — Negligent Misrepresentation as a Certified

---

[7] Doc. 39 at 2.

[8] Doc. 52-2.

4

Public Accountant; Count 7 — Negligence as a Certified Public Accountant; Count 9 — Violation of sections 10(b) and (10)(b)(5) of the Securities Exchange Act of 1934; Count 10 — Violation of the Kansas Uniform Securities Act; Count 12 — Breach of Contract; Count 13 — Breach of the Duty of Good Faith and Fair Dealing; Count 14 — Breach of Fiduciary Duty as an Officer of Foxfield Villa; Count 17 — Aiding and Abetting RDC's Breach of Fiduciary Duty; Count 18 — Fraudulent Nondisclosure; Count 20 — Aiding and Abetting RDC's Fraudulent Nondisclosure; Count 21 — Fraud; Count 23 — Aiding and Abetting the Bank of Blue Valley's and Regnier's Fraud; Count 24 — Tortious Interference with Contracts and Business Expectancy; Count 26 — Aiding and Abetting the Bank's and Regnier's Tortious Interference with Contracts and Business Expectancies; Count 27 — Conversion; Count 29 — Fraudulent Concealment; Count 31 — Civil Conspiracy Between Debtor and RDC; and Count 32 — Joint Venture Between Debtor and RDC. The remaining counts are against RDC, all but two of which are for aiding and abetting Debtor in performing the alleged actions on which the claims against him are based. A jury trial has been demanded. A ten-day trial in the District Court Case is currently scheduled to start on October 2, 2017.

On June 30, 2016, Debtor filed a motion to dismiss the following counts of the District Court Case against him based upon his bankruptcy discharge: Count 1 — Negligent Misrepresentation; Count 3 — Negligence as a Real Estate Broker and/or Salesperson; Count 5 — Negligent Misrepresentation as a Certified Public Accountant; Count 7 — Negligence as a Certified Public Accountant; Count 12 — Breach of Contract;

5

Count 13 — Breach of the Duty of Good Faith and Fair Dealing; Count 24 — Tortious Interference with Contracts and Business Expectancy; Count 27 — Conversion; and Count 31 — Civil Conspiracy.

**3. Proceedings in this Court addressing the issue whether the Bartlett Parties' claims against Debtor should be tried in the District Court Case before this Court addresses the dischargeability complaint.**

The question whether Debtor's liability should be determined in the District Court Case before this Court hears the dischargeability complaint has been presented by three motions. The first was a motion the Bartlett Parties filed on June 29, 2016, for a determination that all issues related to dischargeability should be determined by the Bankruptcy Court and to confirm that the Bartlett Parties may pursue all their claims against Debtor in the District Court Case.[9] Debtor opposed that motion.[10] The second was Debtor's motion filed on August 10, 2016, seeking an order staying the District Court Case under § 105 and an injunction against the continuation of the District Court Case until after the completion of the dischargeability proceeding.[11] The Bartlett Parties opposed that motion.[12] The third motion is the one that is being decided by this order.

The Court heard arguments on the first and second motions. The status of the District Court Case, the nature of the claims asserted, and their relationship to the

---

[9] Doc. 48.

[10] Doc. 52.

[11] Doc. 57.

[12] Doc. 60.

6

adversary proceeding were addressed. During that hearing, the Court noted the interplay

between the stay of § 362, which under § 362(c)(2) expires at the time a discharge is

granted to an individual who is a Chapter 7 debtor, and § 524(a)(2), which states that a

discharge acts as an injunction against actions to collect any discharged debts. The Court

and the parties discussed the Tenth Circuit BAP's decision in *In re Eastburg*,[13] which

interpreted the § 524(a)(2) discharge injunction to apply not only to discharged claims,

but also to claims that are the subject of unresolved dischargeability complaints, which

are "'presumptively discharged' until a court makes a finding regarding

dischargeability."[14] Thereafter, on September 19, 2016, the Bartlett Parties filed the third

motion, seeking modification of the discharge injunction. They called this motion a

supplement to their motion for a determination that all issues of dischargeability should

be determined by this Court and for confirmation that the Bartlett Parties may pursue all

the claims they have asserted against Debtor in the District Court Case. Debtor opposes

this third motion.

      The Court has ruled separately on the first two motions. The Court found the relief

sought in Debtor's motion for an injunction to be unnecessary because under *Eastburg*,

the District Court Case against Debtor is presently enjoined by the § 524(a)(2) discharge

injunction for all the Bartlett Parties' claims, including those which are the subject of the

---

[13] *BUKE, LLC, v. Eastburg (In re Eastburg)*, 447 B.R, 624, 632 (10th Cir. BAP 2011).

[14] *Id.* (bold-face omitted).

dischargeability complaint.[15]  With respect to the Bartlett Parties' motion regarding the

district court's authority to determine dischargeability issues, the Court held that although

jurisdiction to determine which debts are excepted from discharge generally resides in the

bankruptcy court, other courts, such as the district court, have jurisdiction to consider the

effect of the discharge.[16]  But the Court also held that when Debtor was granted a

discharge on February 6, 2014, the § 362 stay terminated, and the September 18, 2013

order granting the Bartlett Parties relief from the stay became a nullity.[17]  The rulings on

both motions are based upon the finding that the proceedings in the District Court Case

against Debtor are enjoined by the discharge injunction of § 524(a)(2).

This leaves the third motion, referred to as the supplemental motion, for

determination.  Because it is so closely related to the first and second motions, the Court

will consider the arguments submitted in support of and in opposition to the first and

second motions when ruling on the supplemental motion.

The Bartlett Parties submit that the discharge injunction should be modified to

allow the District Court Case to proceed to a conclusion before the dischargeability

complaint is considered.  First, they argue that Debtor should not be able to abandon his

"agreement" in 2013 that the District Court Case be tried to conclusion before the

dischargeability complaint.  According to the Bartlett Parties, an enforceable agreement

---

[15] Doc. 76.

[16] Doc. 72.

[17] *Id*.

8

arose when Debtor decided not to oppose their 2013 motion for relief from stay to litigate their claims in the District Court Case to a conclusion and their related motion to stay the dischargeability adversary proceeding.  Second, the Bartlett Parties argue that under the doctrine of collateral estoppel, the district court's findings would apply in the adversary proceeding, eliminating any need to retry issues.  In addition, they point out that discovery has proceeded in the District Court Case and that the case is currently scheduled for a jury trial commencing on October 2, 2017.

Debtor argues that staying the District Court Case is supported by judicial economy and the benefit to him of  the lower cost of litigating the four dischargeability claims in a bench trial in this Court rather than the 32 claims alleged against him and RDC in a jury trial in the district court.  He also argues that if the district court is not barred from considering all the claims alleged against him, there is a risk he will be required to defend many claims that have no possibility of being excepted from his discharge by any provision of § 523.[18]  Further, Debtor points out that the reasons originally stated by the Bartlett Parties in support of their 2013 stay relief motion are no longer valid.  As stated in the 2013 motion, at that time, 15 individuals in addition to Debtor were defendants in the District Court Case and the claims against those individuals were intertwined with the claims against Debtor.[19]  This is no longer the

---

[18] This risk exists because the district court has not ruled on Debtor's motion to dismiss some of the claims alleged in the District Court Case, based upon his discharge.

[19] Doc. 36 at 2-3 (Bartlett Parties' motion for relief from stay).

9

situation; Debtor and RDC, which is owned 100% by Debtor, are the only remaining defendants. Debtor asserts that RDC has no assets and no applicable insurance coverage, but the Bartlett Parties do not concede these matters.

**ANALYSIS.**

**A. Modification of the Discharge Injunction for the Purpose of Recovery from Debtor.**

Section 524(a)(2) provides:

> (a) A discharge in a case under this title —
> . . .
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

As stated above, the Tenth Circuit BAP in *Eastburg* has interpreted this subsection to mean that claims which are the subject of an unresolved dischargeability complaint when a discharge is granted are "'presumptively discharged' until the bankruptcy court makes a determination regarding dischargeability."[20] The BAP's interpretation removes these types of debts from "'debt limbo' with neither the automatic stay nor the discharge injunction functioning to protect debtors."[21] Even though the Bankruptcy Code does not expressly provide for relief from the discharge injunction, the BAP found that a majority

---

[20] *Eastburg*, 447 B.R. at 632 (bold-face omitted). The facts in *Eastburg* were similar to those before this court, with the exception that the nonbankruptcy court action was pending in state court rather than federal court.

[21] *Id*. at 632, n. 38.

10

of courts have concluded that the discharge injunction may be modified and that

modification is one method for the bankruptcy court to exercise its role of "traffic cop"

with respect to creditors' actions against discharged debtors.[22]  The BAP noted that

although the bankruptcy court has exclusive jurisdiction over a determination of

dischargeability under § 523(a)(2), (4), and (6), it has concurrent jurisdiction with other

courts to adjudicate the extent of debts within these exceptions.  Accordingly "whether or

not the validity and extent of a debt is better litigated in the bankruptcy court or the state

court [where the creditor's litigation against the Eastburgs was pending] is left to the

bankruptcy court's discretion."[23]

    The factors which the Court should consider when exercising its discretion to

modify the discharge injunction have not been definitively identified.[24]  In the

---

[22] *Id.* at 633.

[23] *Id.*

[24] The Court has not located any widely-accepted enumeration of relevant factors.  The *Eastburg* decision, without citing any authority, identified the following as relevant considerations, but they have not been adopted by other courts:

> Many factors may impact a bankruptcy court's decision in this regard, and as a result, such decision would necessarily be made on a case-by-case fact specific basis.  Among the relevant criteria would likely be judicial economy and efficiency (for example, at what phase of litigation is the state court action), the burden and expense to the parties (for example, the time and expense that would be involved in duplication of discovery and litigation), whether there are additional integral parties to the state court action over which the bankruptcy court does not have jurisdiction, the right to a jury trial in state court, whether the state court proceeding negatively impacts the bankruptcy estate, and whether the state court proceeding would impair a debtor's reorganization efforts.

*In re Eastburg*, 447 B.R. at 633-634.  These considerations are either expressly or impliedly included in the *Curtis* factors discussed later in the text.

circumstances of this case, the decision whether to modify the discharge injunction is indistinguishable from a decision whether to grant relief from the automatic stay.[25] The Court therefore finds that the factors relevant to stay relief should control its analysis. "In the absence of a comprehensive Tenth Circuit test, a list of factors identified in *In re Curtis* is often relied on by courts in their determination of whether stay relief should be granted"[26] to permit litigation against the debtor to proceed in another forum. The *Curtis* factors are:

> (1) Whether the relief will result in a partial or complete resolution of the issues.
> (2) The lack of any connection with or interference with the bankruptcy case.
> (3) Whether the foreign proceeding involves the debtor as a fiduciary.
> (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.
> (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.
> (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.
> (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.
> (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).

---

[25] *See In re Gibellino-Schultz*, 446 B.R. 733, 739 (Bankr. E.D. Pa. 2011) (treating motion for relief from stay as motion for modification of discharge injunction where § 362 stay expired while relief from stay motion was pending because debtor was granted discharge).

[26] *Dampier v. Credit Investments, Inc. (In re Dampier)*, 2015 WL 6756446, *4 (10th Cir BAP Nov. 5, 2015) (not designated for publication).

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).
(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.
(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.
(12) The impact of the stay on the parties and the "balance of hurt."[27]

The *Curtis* court observed that "[i]n considering the foregoing factors, it must be borne in mind that the process of determining the allowance of claims is of basic importance to the administration of a bankruptcy estate."[28]

After due consideration of the *Curtis* factors, the Court finds that the discharge injunction should be modified. The factors of primary importance are the first, tenth, eleventh, and twelfth; the others are not material considerations in this case. The first and the tenth factors are closely related. The first asks whether modification will result in a partial or complete resolution of the issues. The tenth focuses upon the impact of modification on judicial economy, and the expeditious and economical determination of the litigation for the parties.

In this case, if modification is denied, the dischargeability complaint cannot be fully resolved by this Court. A bankruptcy court has jurisdiction to determine the extent

---

[27] *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (citations omitted).

[28] *Id*. at 800.

13

of liability on claims alleged to be nondischargeable under § 523(a)(2), (4), and (6)[29] and the dischargeability of such liability.[30]  But, as examined below, the Court finds that it does not have similar jurisdiction with respect to the § 523(a)(19) exception from discharge.  That exception has two parts.  Subsection (A) specifies the underlying conduct of the debtor that is covered, which includes the violation of state or federal securities laws.  Subsection (B) requires that the debt be the subject of a judgment, settlement, or order.[31]  As originally enacted, § 523(a)(19) required a prepetition judgment, settlement, or order, but the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) eliminated any such time limitation, expanding the exception from discharge

---

[29] *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017-18 (9th Cir. 1997); *Lang v. Lang (In re Lang)*, 293 B.R. 501, 516-17 (10th Cir. BAP 2003).

[30] 11 U.S.C. § 523(c)(1); 4 *Collier on Bankruptcy* ¶ 523.03 at 523-17 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2016).

[31] Under § 523(a)(19) an individual debtor cannot obtain a discharge of any debt that:

    (A) is for —
        (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
        (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
    (B) results, before, on, or after the date on which the petition was filed, from —
        (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
        (ii) any settlement agreement entered into by the debtor; or
        (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

14

to include postpetition judgments, settlements, and orders.[32]  The question is whether a bankruptcy court has jurisdiction to adjudicate liability on a claim to satisfy the subsection (B) requirement.  The only case law is from bankruptcy courts, and they disagree.  In *In re Chan*,[33] a bankruptcy court in the Eastern District of Pennsylvania held that it had such authority, reasoning that because a bankruptcy court clearly had jurisdiction to rule on the dischargeability of a judgment for a securities violation, it also had authority to determine the debtor's liability.  But in *In re Jafari*,[34] Bankruptcy Judge Elizabeth Brown of the District of Colorado rejected the reasoning of *Chan*.  Based upon a thorough examination of the legislative history, the language, and the structure of § 523, she concluded that "[s]ubection (B) evidences a conscious choice to have the liability determination occur outside of the bankruptcy forum."[35]  This Court finds Judge Brown's analysis to be convincing.  Therefore, if modification of the discharge injunction were denied, this Court could not adjudicate all the allegations of the Bartlett Parties' objection to discharge.

On the other hand, if the discharge injunction is modified to allow the claims against Debtor in the District Court Case that are allegedly excepted from his discharge to

---

[32] *In re Chan*, 355 B.R. 494, 503 (Bankr. E.D. Pa. 2006) (citing Pub. L. No. 109-8, § 1404(a), 119 Stat. 23 (2005)); *see also* 4 *Collier on Bankruptcy*, ¶ 523.27[1] at 523-132.3 (suggesting pre-BAPCPA version of § 523(a)(19) "may have" required prepetition determination of debtor's liability).

[33] *In re Chan*, 355 B.R. at 502-05.

[34] *Faris v. Jafari (In re Jafari)*, 401 B.R. 494 (Bankr. D. Colo. 2009).

[35] *Id.* at 499 (emphasis omitted).

be tried there before the dischargeability complaint is tried here, the parties will need to return to this Court to finally resolve the dischargeability question.  This is because the bankruptcy court has exclusive jurisdiction to determine dischargeability under § 523(a) (2), (4), and (6).[36]  To the extent that rulings in the District Court Case have collateral estoppel effect, the dischargeability litigation would be simplified, but it cannot be avoided except by a settlement.

The Court therefore concludes that judicial economy and the expeditious determination of the litigation favors modification of the discharge injunction.  The division of jurisdiction strongly supports modification.  If this Court were to determine Debtor's liability on and the dischargeability of the § 523(a)(2), (4), and (6) claims first, subsequent litigation of the securities dischargeability claim would likely require consideration of the same conduct that was at issue here.  Likewise, the Court understands that the majority of the claims against RDC are based upon Debtor's alleged wrongful conduct and that resolution of those claims will likely require the presentation of some of the same evidence that would have been presented to this Court to prove the § 523(a)(2), (4), and (6) claims.  If instead the District Court Case is concluded first, hopefully the findings in that case will expedite the resolution of the dischargeability complaint before this Court and duplicative litigation will be minimized.

With regard to the eleventh Curtis factor, the Bartlett Parties assert that the District

---

[36] 11 U.S.C. § 523(c)(1); 4 *Collier on Bankruptcy*, ¶ 523.03 at 523-17.  The Bartlett Parties agree that the bankruptcy court has exclusive jurisdiction to determine dischargeability under § 523(a)(2), (4), and (6).  Doc. 56 at 17.

Court Case is close to being ready for trial, which is scheduled for the fall of 2017. Although Debtor does not agree that the pretrial proceedings are essentially complete, it is clear that the case is well on its way to being ready for trial. The status of the case therefore supports modifying the discharge injunction, since the District Court Case can be resolved within a year. The economies of the alternative litigation options are not clear.

The twelfth Curtis factor requires the Court to consider the impact of the injunction on the parties and the "balance of hurt." Here, only the litigants are affected. Debtor had no nonexempt assets and no creditors that could be affected by a modification of the injunction. Whether Debtor will benefit from or be harmed by a modification of the injunction is difficult to predict. Granting the modification will benefit the Bartlett Parties by preserving their demand that Debtor's liability be determined by a jury, a right which would be in jeopardy if liability on the § 523(a)(2), (4), and (6) claims were litigated before this Court.[37]

Based upon the foregoing evaluation of the *Curtis* factors, the Court determines that the discharge injunction should be modified. However, that modification is limited to allowing the District Court Case to proceed against Debtor for the purpose of judgment against Debtor only on those claims that have elements that are the same as the elements

---

[37] *See Pearson Educ., Inc., v. Almgren*, 685 F.3d 691, 694-95 (8th Cir. 2012) (by filing claims in bankruptcy case, creditors relinquished right to have jury determine amount of damages debtor owed them for copyright infringement); *Lang v. Lang (In re Lang)*, 166 B.R. 964, 966-67 (D. Utah 1994) (nondischargeability complaint qualified as informal proof of claim which was sufficient to waive right to jury trial in resulting adversary proceeding).

of one or more of the exceptions to discharge under § 523(a)(2), (4), (6), and (19). The scope of this modification of the discharge injunction is less than the scope of the relief from stay that was previously granted to the Bartlett Parties to allow the "continuation of and conclusion to the entry of final judgment in the District Court Actions . . . against the Debtor." Circumstances have changed since that relief was granted, and Debtor is no longer bound by his failure to object to such broad relief. Debtor has been granted a discharge, and the District Court Case has been resolved for all parties except Debtor and RDC.

### B. Modification of the Discharge Injunction to Establish Debtor's Liability for the Purpose of Recovery from Third Parties.

In addition to seeking modification of the discharge injunction for purposes of obtaining judgments against Debtor on claims that may be excepted from his discharge, such as for fraud, the Bartlett Parties also argue that they should be permitted to pursue claims that are clearly not within the scope of the exceptions to discharge so they may recover from third parties on the claims.[38] The claims for Debtor's alleged negligence when acting as a real estate broker or sales person and for his alleged breach of contract are examples.

A debtor's discharge is intended to preserve the debtor's fresh start, but not to provide a shield for third parties, such as insurers, who may be liable on the debtor's

---

[38] *See* doc. 56 at 7 and 20-22, and doc. 60 at 8. The claims included in this category are Counts 1, 3, 5, 7, 12, 17, 20, 23, and 26.

discharged claims.[39]  Section 524(a)(2) establishes the discharge injunction, but § 524(e)

provides that the "discharge of a debt of the debtor does not affect the liability of any

other entity on, or the property of any other entity for, such debt."  "[T]his provision

permits a creditor to bring or continue an action directly against the debtor for the purpose

of establishing the debtor's liability when . . . establishment of that liability is a

*prerequisite* to recovery from another entity."[40]  "[T]his exception . . . hinges 'upon the

condition that the debtor would not be personally liable in a way that would interfere with

the debtor's fresh start in economic life.'"[41]  Although defense costs incurred by a debtor

could frustrate the fresh start, such costs standing alone have been rejected as a basis to

find that the injunction bars such claims, in part because the realities of litigation are

likely to compel the third party to defend the underlying action.[42]

Section 524(e) does not expressly require a motion or a ruling by this Court as a

prerequisite for the Bartlett Parties to proceed against Debtor as a nominal defendant.  A

noted commentator states, "There is disagreement about whether relief from the discharge

injunction must be sought when an action must be brought against the debtor to collect

from another entity or whether the injunction simply does not apply to an action in which

---

[39] *Walker v. Wilde (In re Walker)*, 927 F.2d 1138, 1142 (10th Cir. 1991).

[40] *Id*. (emphasis added).

[41] *Id*. (*quoting Owaski v. Jet Florida Sys., Inc. (In re Jet Florida Sys., Inc.)*, 883 F.2d 970, 975 (11th Cir. 1989)).

[42] *In re Jet Florida Sys.*, 883 F.3d at 976; *see also In re Walker*, 927 F.2d at 1143-44.

19

the plaintiff explicitly waives any right to collect a monetary recovery from the debtor."[43] The Tenth Circuit has stated, "It is well established that this provision permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when . . . establishment of that liability is a *prerequisite* to recovery from another entity."[44] Based upon this statement and the statutory language, the Court finds that in this circuit, modification of the discharge injunction is not required when an action against a discharged debtor comes within the exception of § 524(e).

Nevertheless, the issue is before this Court by virtue of the Bartlett Parties' arguments in their briefs that they may proceed against Debtor on many discharged claims which are clearly outside the exceptions to discharge because third parties may be liable for any judgments entered against Debtor on these claims.[45] But the suggestion of third-party liability appears to be a speculative, newly-found argument.[46] The third parties who might be liable are not identified. The basis for third-party liability is not alleged in the amended complaint. With one exception, there is no argument that a judgment against Debtor is *required* to establish third party liability.[47] Further, the

---

[43] 4 *Collier on Bankruptcy*, ¶ 524.05 at 524-59.

[44] *In re Walker*, 927 F.2d at 1142 (emphasis added).

[45] Doc. 56 at 7 and 20-22; Doc. 60 at 8.

[46] For example, the argument that the Bartlett Parties seek a judgment against Debtor for the purpose of subsequently seeking recovery from the Kansas Real Estate Recovery Revolving Fund under K.S.A. 2015 Supp. 58-3068 was raised only in opposition to Debtor's motion to impose a stay under § 105. *See* doc. 60 at 7-8.

[47] K.S.A 2015 Supp. 58-3068(b)(1) does require a judgment as a condition of recovery.

Bartlett Parties have not waived their right to collect any judgment on such claims from Debtor and have not stated that Debtor is only a nominal defendant as to such claims. Given the current status of the District Court Case, the Court does not find that any of the claims alleged in the District Court Case which have been discharged and are not the subject of the dischargeability complaint are excepted from the discharge injunction by § 524(e). A ruling on the applicability of the § 524(e) limit on the discharge injunction is better made after discovery has been completed and the District Court Case is ready for trial, when the nature of the alleged third-party liability can be stated with more certainty.[48]

## CONCLUSION.

The discharge injunction shall be modified to allow the Bartlett Parties to pursue their claims against Debtor in the District Court Case that have elements that are the same as those of one or more of the exceptions to discharge under § 523(a)(2), (4), (6), and (19). The Court does not find that any of the allegations of the amended complaint in the District Court Case state claims that fall within the § 524(e) exception to the discharge injunction which allows proceedings against a debtor on discharged claims for the purpose of recovering from third parties.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules

---

[48] At that time, the filing of a motion in this Court to modify the discharge injunction will not be required to proceed against Debtor as a nominal defendant, since § 524(e) is an exception to the discharge injunction. The district court's jurisdiction over the District Court Case includes jurisdiction to determine what claims, if any, fall within the § 524(e) exception to the injunction and what claims may be pursued under the modification of the discharge injunction granted herein.

7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure, which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

**JUDGMENT**.

Judgment is hereby entered modifying the § 524(a) discharge injunction to allow the Bartlett Parties to pursue their claims against Debtor in the District Court Case that have elements that are the same as those required to except a debt from discharge under § 523(a)(2), (4), (6), or (19). The judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

# # #

22